IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARIOUS MOLINA, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 21-994 |
| | : | |
| v. | : | |
| | : | |
| NORTHAMPTON COUNTY ELECTIONS | : | |
| DEPARTMENT, NORTHAMPTON | : | |
| COUNTY DEPARTMENT OF | : | |
| CORRECTIONS, AMY COZZE, JAMES | : | |
| C. KOSTURA, and DAVID J. | : | |
| PENCHISHEN, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                                   September 29, 2021

The *pro se* plaintiff has filed an application for leave to proceed *in forma pauperis* and a complaint where he asserts claims under 42 U.S.C. § 1983, claiming that the defendants prevented him from voting in the November 2020 election. At the time of the election, the plaintiff was incarcerated in a county jail awaiting disposition of criminal charges. It appears that he attempted to obtain a mail-in ballot at the jail, but the county elections office sent the ballot to his voter registration address instead.

After reviewing the application for leave to proceed *in forma pauperis* and the complaint pursuant to the court's screening authority under 28 U.S.C. § 1915, the court will grant the application for leave to proceed *in forma pauperis*. The court will also dismiss the complaint because the plaintiff has failed to state a plausible claim for relief against any defendant. This dismissal will be without prejudice to the plaintiff to file an amended complaint.

## I.   ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Darious Molina ("Molina"), commenced this action by filing an application for leave to proceed *in forma pauperis* (the "IFP Application"), a complaint, and a prisoner trust fund account statement, all which the clerk of court docketed on February 26, 2021. *See* Doc. Nos. 1–3. In the complaint, Molina identifies the following defendants: (1) the Northampton County Elections Office ("Elections Office");[1] (2) the Northampton County Department of Corrections ("NCDOC"); (3) Amy Cozze, allegedly the Chief Registrar of Elections in Northampton County ("Cozze"); (4) James Kostura, allegedly the Director of Corrections in Northampton County; and (5) David Penchishen, allegedly the Warden of the NCDOC ("Warden Penchishen"). *See* Compl. at ECF pp. 4–7. Molina sues the individual defendants in their official and individual capacities, while he sues the remaining defendants only in their official capacities. *See id.* at ECF pp. 5–7.

Molina alleges that the defendants did not allow him to vote in the election on November 3, 2020. *See id.* at ECF p. 10. Regarding his attempts to vote on November 3rd, Molina alleges that on October 12, 2020, he submitted a "DOC Inmate Tablet Request Slip" regarding a "Missing Ballot/Mail Issue."[2] *Id.* at ECF p. 14. The case manager responded to Molina's request by stating: "I suggest you either speak with the Mail Officer or possibly the 10-6 Shift Lieutenant." *Id.* Molina also sent a letter to the Elections Office on October 23, 2020, but he did not receive a response to his letter. *See id.* at ECF p. 15.

---

[1] Molina incorrectly names the Northampton County Elections Department as a defendant, but this entity does not exist.

[2] Unfortunately, Molina does not organize his allegations in a cohesive (or even in a narrative form). For the most part, he just references dates and the letters or request slips that he submitted on those dates. He generally does not provide detail as to what actually occurred on those dates, such as what he stated in the letter or the request slip. As such, the court combines portions of the complaint to best describe his factual allegations.

At 10:53 a.m. on the day of the election, Molina submitted another slip regarding voting. *See id.* at ECF p. 14. The case manager responded to this slip by stating: "I see that your paperwork went over on 9/29 to the Elections Office -- the jail provided you with the paperwork -- I suggest you write to the Elections Office." *Id.* Later that morning, Molina submitted another slip request to follow-up on his earlier request. *Id.* The case manager's response to this follow-up request was: "Duplicate -- There is nothing I can do for you[.]" *Id.* Apparently, Molina never voted on November 3, 2020. *See id.* at ECF p. 10.

The NCDOC's Administrator of Security, Captain David C. Collins, Sr., inquired into Molina's concerns with not receiving a mail-in ballot for the November 2020 election. *See* Doc. No. 2-1, at ECF p. 1. Captain Collins provided Molina with a memo dated November 9, 2020, in which he stated the following:

> Mr. Molina,
>
> I did look into your concerns with not receiving a voter's ballot as described in your Request Slip.
>
> What I have discovered, is that you and other inmates all received your packets on September 22, 2020 and that once filled out and completed, the DOC sent them out on September 29, 2020.
>
> I also understand; that not only you, but additional inmates also, did not receive ballots to proper [sic] cast your votes. With that being said, unfortunately, your issue is not with the DOC, but rather with Northampton County Elections.
>
> In closing, you may want to seek or speak to your legal counsel regarding your complaint, or contact County Elections in your own right, for the appropriate resolution.
>
> At this time, your request to receive a Grievance Form is denied, because your issue is not with or within the DOC, rather the County Elections Department.
>
> My apologies to you and I wish you luck.

*Id.*

Molina alleges that he attempted to contact the Elections Office on December 4, 2020. *See* Compl. at ECF p. 15. He also sent a letter to Warden Penchishen on December 23, 2020, but the warden did not respond to him.[3] *See id.* at ECF p. 16; Doc. No. 2-1 at ECF p. 3. Unlike Warden Penchishen, Cozze did respond to Molina's December 4, 2020 letter via a letter dated December 30, 2020. *See id.*; Doc. No. 2-1 at ECF p. 2. In this December 30th letter, Cozze stated:

> Dear Mr. Molina,
>
> We received your inquiry. Your mail-in ballot application was approved and the ballot was sent to the address at which you are registered, 3436 Easton Ave, Bethlehem, on October 5th. Election ballots on [sic] non-forwardable and there is no alternate mailing address associated with your voter registration. Had you contacted us prior to November 3rd, we could have voided the original ballot and sent a new ballot to the prison.
>
> We did receive several requests from the prison for the 2020 election, however we have to await verification from prison administration prior to approval of the application for a ballot, as any person serving a sentence for either a misdemeanor or felony is not eligible to vote. Only those awaiting trial and not yet convicted of a crime are eligible to vote absentee from prison.

Doc. No. 2-1 at ECF p. 2.

Molina continued his inquiry into what happened concerning his mail-in ballot via two slips submitted at the NCDOC on January 5, 2021. *See* Compl. at ECF p. 15. The NCDOC law librarian responded to the first slip by stating: "Please contact Northampton County Elections at the Courthouse regarding verification of mail in ballots." *Id.* The case manager responded to the second slip by stating: "You are going to have to contact the Northampton County Elections

---

[3] In this letter, Molina wrote:

> Mr. Penchisen [sic],
>
> My name is Darious Molina and am [sic] currently incarcerated at NCP. I am contacting you in regards to the recent election. I've been trying to figure out why the Northampton County Elections Dept. never forwarded me the mail-in ballots that were requested by the Prison. Nobody seems to have answers. I was hoping you could clarify things for me.

Doc. No. 2-1 at ECF p. 4.

Office[.]" *Id.* Apparently, Molina tried to contact the Elections Office by sending letters to Cozze on January 23, 2021, and February 5, 2021, but he did not receive a response to them. *See id.* at ECF p. 16.

Based on these allegations, Molina asserts claims against the defendants under 42 U.S.C. § 1983 insofar as the defendants violated his rights under 52 U.S.C. §§ 10101(1), (2)(A)(B). *See id.* at ECF p. 6. He claims that "[e]ach and every Defendant acted under color of state law by not allowing [him] to vote and/or not making proper accommodations for [him] to cast his vote." *Id.* at ECF p. 6; *see id.* at ECF p. 10 ("I was denied not only my right to vote but also proper access to vote by all the defendants. Also involved are the DOC's case managers, captain, and law librarian."). For relief, Molina seeks "money damages in the amount of $1 million and punitive damages in the form of an official public apology admitting guilt and remorse as well as a donation of $50,000 to a civil rights activist campaign all parties agree upon." *Id.* at ECF p. 10.

The court notes that the publicly available docket entries show that Molina entered into a negotiated guilty plea to the charge of Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver Controlled Substances in violation of 35 P.S. § 780-113(a)(30) in the Court of Common Pleas of Northampton County on August 19, 2021. *See* Docket, *Commonwealth v. Molina*, No. CP-48-CR-1061-2020 (Northampton Cnty. Ct. Com. Pl.), *available at*: https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-48-CR-0001061-2020&dnh=Lu14gD8NO8rJHGBnbkgkfw%3D%3D. On this date, the Honorable Paula A. Roscioli also sentenced Molina to a sentence of state incarceration for a minimum of 15 months to a maximum of 36 months. *Id.* Molina is currently located at SCI – Smithfield.[4] *Id.*

---

[4] Although Molina notified the court of a change in address on June 9, 2021, *see* Doc. No. 7, he has not notified the court of his change of address since being transferred from the Northampton County Jail to SCI – Smithfield despite the requirement that he keep the court updated as to his current mailing address. *See* E.D. Pa. Loc. Civ. R. 5.1(b) ("Any party who appears pro se shall file with the party's appearance or with the party's initial pleading, an address

## II.      DISCUSSION

### A.      The IFP Application

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (per curiam) (footnote omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must]

---

where notices and papers can be served. Said party shall notify the Clerk within fourteen (14) days of any change of address."); *see also* Notice of Guidelines for Representing Yourself (Appearing "Pro Se") in Fed. Ct. at 1, Doc. No. 4 ("The Court will send orders or notices filed in your case to you at the address you provided to the Court. It is important to keep the Court and opposing counsel, if any, advised of your current address. Failure to do so could result in Court orders or other information not being timely delivered, which may result in your case being dismissed for failure to prosecute or otherwise affect your legal rights. The Court's local rules require you to file a notice of change of address with the Clerk of Court within fourteen (14) days of an address change. See Local Rule 5.1(b).").

review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application, it appears that Molina is unable to pay the costs of suit. Therefore, the court will grant him leave to proceed *in forma pauperis*.[5]

**B.      Standard of Review – Screening of Complaint Under 28 U.S.C. § 1915**

Because the court has granted Molina leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

---

[5] As Molina is a prisoner, he must fully pay the filing fee in installments due to the Prison Litigation Reform Act.

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Shorter v. United States*, No. 20-2554, 2021 WL 3891552, at *5 (3d Cir. Sept. 1, 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Yet, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

Additionally, when construing a *pro se* plaintiff's complaint, the court will "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). However, *pro se* litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

## C.   <u>Analysis</u>

Molina is seeking relief in this case under 42 U.S.C. § 1983. This statute provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."). For the following reasons, Molina has failed to allege a plausible claim against any defendant under section 1983.

### 1.   Molina's Claims Against the Elections Office and the NCDOC

Molina may not maintain a section 1983 claim against the NCDOC because it is not a proper defendant; instead, it is merely a department of Northampton County and not a separate legal entity subject to suit under section 1983. *See Edwards v. Northampton Cnty.*, 663 F. App'x

132, 136 (3d Cir. 2016) (per curiam) (concluding that district court properly dismissed plaintiff's conditions-of-confinement claims against Northampton County Prison because it is not a "person" subject to suit under section 1983 (citing *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973))); *Ferretti v. Northampton Cnty. Jail*, Civ. A. No. 21-CV-3530, 2021 WL 4306054, at *5 (E.D. Pa. Sept. 22, 2021) ("The § 1983 claim against [the Northampton County Jail] is also dismissed because a jail is not a 'person' under Section 1983." (citations omitted)); *Worthington v. Cnty. of Northampton*, Civ. A. No. 13-6292, 2015 WL 1312644, at *6 (E.D. Pa. Mar. 24, 2015) ("The plaintiff cannot bring this section 1983 claim against the [Northampton County] Prison because it is not a 'person' for purposes of liability under section 1983." (citations omitted)); *see also Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013) (per curiam) (concluding that district court properly dismissed claims against county prison because even though "[a] local governmental agency may be a 'person' for purposes of § 1983 liability[, the county prison] is not a person capable of being sued within the meaning of § 1983" (internal citations omitted)). Similarly, the Elections Office is a department of Northampton County and not a separate legal entity subject to suit under section 1983. *See Donahue v. Luzerne Cnty. Corr. Facility*, Civ. A. No. 3:13-CV-1271, 2013 WL 3933935, at *2 (M.D. Pa. July 30, 2013) ("Defendant Luzerne County Elections Office is not a proper defendant because it is merely a department of Luzerne County and not a separate legal entity subject to suit." (citation omitted)); *see also Hatfield v. Berube*, 714 F. App'x 99, 102 n.1 (3d Cir. 2017) (per curiam) ("Pennsylvania county offices . . . are treated as municipalities for purposes of *Monell*." (citing *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013))); *K.S.S. v. Montgomery Cnty. Bd. of Comm'rs*, 871 F. Supp. 2d 389, 395 (E.D. Pa. 2012) ("It is well established that arms of local municipalities—such as county departments and agencies

like [the Montgomery County Office of Children and Youth]—do not maintain an existence independent from the municipality." (citations omitted)).

Even if the NCDOC and the Elections Office were proper defendants under section 1983, Molina has failed to state plausible claims against them. To assert plausible claims against these defendants, Molina must allege that the municipality (in this case, Northampton County) has a policy or custom which caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978) ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Thus, Molina "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the applicable pleading standard. *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted).

A "policy" arises when a decision-maker possessing final authority issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiff's] injury." *Id.* (internal quotation marks and alterations omitted).

11

Regardless of whether a plaintiff is seeking to impose *Monell* liability for a policy or a custom, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *see also Bielevicz*, 915 F.2d at 850 (explaining that in both methods to obtain liability under *Monell*, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom").

In addition,

> [t]here are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Bryan County*, 520 U.S. at 417, 117 S.Ct. 1382 (Souter, J., dissenting). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Id.* Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice is likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Id.* at 417–18, 117 S.Ct. 1382 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Berg*, 219 F.3d at 276 (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

*Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (alterations in original) (internal footnote omitted).

Molina has not alleged that the named defendants acted pursuant to a policy or custom established by Northampton County which interfered with his right to vote. As such, he has not stated a plausible *Monell* claim in the complaint. The court will therefore dismiss Molina's claims against the Elections Office and the NCDOC with prejudice but will grant him leave to file an

amended complaint against Northampton County (by naming Northampton County as a defendant) if he can establish, through plausible factual allegations, that Northampton County maintained an unconstitutional policy or custom that caused the alleged constitutional violation. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (explaining that district court ordinarily must grant leave to amend, even without plaintiff requesting leave to amend, "unless amendment would be inequitable or futile").

### 2.    Molina's Official Capacity Claims Against the Individual Defendants

A plaintiff suing under section 1983 can assert claims against individuals in their individual and official capacities. Individual capacity claims under section 1983 "seek to recover money from a government official, as an individual, for acts performed under color of state law." *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988). Official capacity claims "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell*, 436 U.S. at 690 n.55). That is because "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. "A judgment against a public servant 'in his official capacity' imposes liability on the entity that [the public servant] represents[.]" *Brandon v. Holt*, 469 U.S. 464, 471 (1985).

Here, Molina's official capacity claims against the individual defendants are effectively claims against Northampton County. As explained when discussing Molina's claims against the Elections Office and NCDOC, Molina has not asserted a plausible claim against the individual defendants in their official capacities because he has failed to identify any policy or custom

followed by the individual defendants that resulted in the alleged constitutional or statutory violation. *See Thomas v. City of Chester*, Civ. A. No. 15-3955, 2016 WL 1106900, at *2 (E.D. Pa. Mar. 21, 2016) ("A suit for damages against an individual municipal employee in his or her 'official capacity' is not cognizable unless the requirements of *Monell* are met." (citation omitted)); *see also McHugh v. Koons*, Civ. A. No. 14-7165, 2015 WL 9489593, at *9 (E.D. Pa. Dec. 30, 2015) ("An official capacity suit against a prosecutor is essentially a municipal liability claim against the District Attorney's Office[ ] pursuant to *Monell*."). Accordingly, the court will dismiss Molina's official capacity claims, but the court will grant him leave to amend these claims should he be able to do so.

### 3.    Molina's Individual Capacity Claims

The gravamen of the complaint in this case is that the defendants prevented Molina from voting in the November 2020 election because he did not receive a ballot as he had requested. *See generally* Compl. Although Molina names Cozze, James Kostura, and Warden Penchishen as defendants, he has not identified any conduct by these defendants which prevented him from voting.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Here, Molina has not alleged any conduct by James Kostura in the complaint. Regarding Warden Penchishen, Molina alleges that he did not respond to a December 23, 2020 letter Molina sent him in which he inquired whether the warden knew why he did not receive a ballot for the election.[6] As for Cozze, Molina's communications with her occurred after the election and there are no factual allegations relating

---

[6] Molina appears to have sent this letter to Warden Penchishen by sending it to the Northampton County Clerk of Court – Criminal Division. *See* Doc. No. 2-1 at ECF pp. 3–4.

14

to her personally interfering with him receiving a mail-in ballot.[7] At bottom, Molina has included no plausible allegations of personal involvement by these named defendants in impeding his access to a mail-in ballot. Accordingly, the court must dismiss the individual capacity claims against these defendants as well. The court will, however, grant Molina leave to amend his claims against these defendants.

### III.    CONCLUSION

For the foregoing reasons, the court will grant the IFP Application. In addition, the court will dismiss with prejudice Molina's claims against the Elections Office and the NCDOC. The court will also dismiss without prejudice Molina's official and individual capacity claims against the remaining defendants. Molina is granted leave to amend these official and individual capacity claims should he be able to do so.

A separate order follows.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[7] Although Molina alleges that he sent a letter to the Elections Office on October 23, 2020, he does not indicate that he directed the letter to Cozze. *See* Compl. at ECF p. 15.